OK. My name is Sheldon Hawthorne, and I'm here today representing USEC, who was the petitioner in the anti-dumping and counterfeiting duty proceedings involving Loewenreich Durandian from France, the loan, and the Department of Commerce, and who is the appellant for this aspect of the appeal from the final determination, which only involves the counterfeiting duty issue. There's a separate appeals that have been raised on the anti-dumping side. It's in the process of being briefed to this court. And there's one issue in the AD case that is comparable to the issue that I'm raising here today, which is an issue I'd like to discuss with you. Everyone agrees, Your Honors, that if a foreign government-owned utility acquires Loewenreich Durandian, LEU, in a single transaction in which both the natural uranium component, the raw material, and the enrichment component, the manufactured product, is purchased in the same transaction, that that constitutes a purchase of goods under the counterfeiting duty law, which, if made at more than adequate remuneration, would be a counterfeitable subsidy. In March 2005, in this court's decision, in Year 8-1, the court decided that if a foreign government-owned utility acquires LEU in a separative work unit contract, a SWU contract, that that is a contract for the purchase of services, not goods, and even if made at more than adequate remuneration, would not be counterfeitable. The issue we're raising today, which we raised to the Department of Commerce on remand below and to the CLAT, is a single issue of whether or not, if the foreign government-owned utility acquires the LEU in a SWU transaction where it also acquires the natural uranium component from an affiliate of the enricher, perhaps even in an integrated transaction, whether or not that constitutes, under the court's decision, a purchase of goods that would be subject to the counterfeiting duty law. But that was one of the issues, was it not, that was under the enrichment deal? No, Your Honor, it wasn't. It wasn't excluded as a suit? Let me explain why, and I think that this goes to the law of the case doctrine, and  Before the Commerce Department, while at one point in the proceedings, in the initial proceedings, USEC sought to get the department to obtain information on the purchases of natural uranium from affiliates of EURD by EDF, the utility in France. The department did not do that. Rather, the department made a decision that a purchase of, the acquisition of LEU under a SWU contract, by itself and without more, without any other conditions, constituted the purchase of goods subject to the counterfeiting duty law. The CIT affirmed that decision so that the only decision that had been decided by the Commerce Department and appealed to the CIT and affirmed was that the transaction involving a SWU contract involves a purchase of goods without more, without irrespective I'm missing, if I can interrupt, I'm missing something in this. Are you talking here, so what you were talking about, you started about what happened with Commerce. You requested, there was a letter in 2001, you requested that the court was doing this. And did Commerce in fact deal with that? No. They put a footnote in one of their... All they did was say that there's information that Kojima is a major producer of natural uranium, that's all they did. Because the rationale for their decision was that it wasn't relevant whether or not you also purchased the natural uranium component from an affiliate of the richer. In their view, the purchase of enrichment by itself was the purchase of a good. That's what the CIT affirmed. So are you saying that this issue was never before the court and there were different ones? I believe it wasn't. Let me direct your attention to the Joint Appendix page 15869. And I'm looking at the five lines at the bottom of the page, not the footnotes, the text. This is from the briefs presented to us in European 1. Yes. The EDF paid for all the components of such LEU from Eurodip in a single purchase transaction or in separate transactions with Eurodip and the other Kojima affiliates. There can be no question that EDF has been purchasing LEU, etc., etc. It seems to me that's the very argument you're trying to raise with us again. Well, Your Honor, we were making that argument in the context of the issue that was presented to the court on the broader question of whether the purchase of LEU through a smooth transaction is... Fair enough. But nonetheless, the issue of the same argument was presented. I think it was merely an argument in support of the broad conclusion we were defending. Remember, we were not the appellant in that aspect of the interlocutory appeal. We were not appealing the CIT's decision. We were defending the CIT's decision. And the CIT's decision, as was the DOC's, was a broad one that irrespective of where the natural uranium came from, the mere purchase of enrichment by itself was a purchase of goods. And I think one sees the difference between the correct application of the law of the case doctrine when one looks at the Doe decision that I know Judge Cross, who of course was involved in it. And that is, in Doe, the attorneys in the Justice Department had raised two separate claims, identified separately in their complaint, one about vacation time, one about overtime. In the course of the appeals, they subsumed their claim about vacation time and their claim about overtime. And so when the court addressed the issue, the court addressed only the overtime issue because they believed it was subsumed in it. It didn't separately, the court didn't separately address the vacation time issue. When that came back, the court properly, and then after that decision by the federal surgeon, then the Doe plaintiffs tried to raise that issue again. The court said properly that by necessary replication, since there had been a separate claim made about that, about vacation time, our decision that rejected the overtime claim necessarily rejected the claim for vacation time. The comparable situation would have been if in the original proceedings of the DOC, the department had said, we believe that the purchase of the school contract is a purchase of goods irrespective of whether or not there were other natural ingredients purchased from affiliates. But moreover, if it is purchased from affiliates, then it's perfectly clear to us that in that case, given the evidence they would have had in front of them if they had collected the purchase with the affiliate transaction for the natural ingredient was a purchase, then both of those issues would have been appealed by the other side. The CIT would have presumably, I suspect, affirmed both issues. And so when it came up to the federal circuit, both issues would have been in front of the federal circuit. In that context, the federal circuit's opinion only said, no, we believe that irrespective of anything, that any purchases under a school contract are purchases of services. Then I believe it would have been subsumed because the issue would have been initially decided by the Commerce Department, initially reviewed by the CIT. That is, the separate affiliate purchase issue would have been raised. It's hard to believe that the issue was raised when, in fact, the CIT, which the court noted that the federal circuit voted in year 1, had thoroughly looked at the facts. In both of its decisions, in footnote 4, both of its decisions, it noted that there was no evidence on the record that indicated that the purchases of natural uranium were being purchased from affiliates. And so it was clear that the CIT, looking at the facts it was looking at, did not believe that this issue either had been raised or that there was evidence of record. We had tried to put some evidence on, but the Department of Commerce, in essence, said there was no need to look at that evidence because they decided the issue on a much broader basis that irrespective of the source of the natural uranium, that that was a purchase of goods. And so I think that to the extent that arguments have been made that the law of the case doctrine precludes the review, I think that that is a wrongful application because I don't think this issue was necessarily decided following the court. In any event... And the fact that the government explicitly did not, in its petition to the hearing, reference this question... Your Honor, I can't explain what they... Is it your position that the government was going outside the record and asking for a review on an ongoing issue that was never before the court in person? I think that they were putting it in as background information for the broader position that they were trying to get the court to reconsider in the AD side. Because the issue had not been raised or addressed, the separation of affiliate purchases had not been raised. I can't believe that they believed in putting that in. They thought that this had been adjudicated by the Commerce Department. You're in your rebuttal. Do you want to say anything? I will say nothing. Thank you. Mr. Olson? Thank you, Your Honor. May it please the court, I'd like to start in the area where this court has expressed keen interest. And that is, what was the effect of the early decisions? And more particularly, what was the effect of the petition for rehearing and this court's consideration of the petition for rehearing? We make much in our brief of the fact that USEC did not raise anything with respect to the purchase, the original purchase of feed uranium in its petition for rehearing. We believe that by that action, if there were an issue relating to feed uranium, USEC has waived the issue. But moreover, as Judge Prost has pointed out, the government raised the issue of feed purchases and made it not simply as background, but rather as part of a claim that the decision was inconsistent with substantial evidence because the court ignored the purchasing of feed uranium from affiliates. The court took the petitions for rehearing and dealt with it. The request for rehearing en banc was rejected and the court, in its panel reaffirmation of the original verdict decision, made clear that its decision with respect to the counter was based on the unambiguous provisions of the statute. Was there a cert petition filed in this case? Was there a cert petition filed? No, Your Honor. There has been talk about a cert petition, but none was filed following the decision on the petition for rehearing. So here we are. This is the second time before you and the third time that the court has been asked to deal with the non-applicability of the counter bail law in the context of enrichment services transactions. The court got it right, and we shouldn't be here again. You've already held that the application of the counter bail duty law to enrichment transactions between EDF and Uradiv is contrary to the statute. The court recognized that in a SWOOP transaction, the utility provides its own feed for enrichment. It continues to own the feed throughout the enrichment transaction, and the utility only based on the number of SWOOPs involved. Given these characteristics, the court came to the inescapable conclusion that no purchase of goods can be involved. USEC claims that the original sourcing of feed is a new issue, and it's newly relevant in light of that decision. But it's not new. As has been pointed out and dealt with in our briefs, the issue was raised as early as April 2001, the very beginning of the cases. It was dealt with before the Commerce Department. It formed a piece of the commerce remand determination based on the totality of circumstances, a term that commerce utilized about eight times, that there was a purchase of goods involved in enrichment transactions. And so not only is the issue new, it's not relevant because, again, this court, in looking at the transaction between EDF and Uradine, and for the same reasons, looking at the dumping transactions that were involved in the same appeal, found that where the utility provides its uranium for enrichment and owns it throughout the enrichment process, that is a transaction that's a service transaction not covered by the countervailing duty law. So all of the claim raised now by USEC, which it raised before, that the original source of uranium, which might be from an affiliate of Uradine, is irrelevant because what happens before the owner- That's an argument on the merits. And your position is that we shouldn't re-adjudicate. We shouldn't re-adjudicate that issue here because it was already covered in your judgment. Exactly. Exactly. It's an argument that the nature of your decision was what is relevant is the enrichment transaction, where the utility already owns the uranium. And it can do whatever it wants with the uranium. It can provide it to one enricher or another. It can sell it or it can hold it in inventory. So prior ownership, the original source, is not relevant to the enrichment transaction. USEC takes the position that the court was in effect deciding in a vacuum only a theoretical issue, whether a swoop transaction can be covered by a countervailing law. But again, the court had a full record before it. The court recognized that it was reviewing Congress's determination that the transaction between Uradine and EDF was a sale of goods. And when it decided that the countervailing duty law could not be applied to the transaction, that disposed of the EDF-Uradine transaction. For USEC to claim now that it has a new issue is inconsistent with the very basis on which we jointly came to this court and sought interlocutory appeal. The parties all stated that disposition of the issue could resolve the entire countervailing duty case. That would not be possible if USEC could come back later and make a claim that Congress should now begin to investigate an entirely separate issue of fee purchasing, an issue that was woven through the case from the beginning. Again, I mentioned that if USEC had a beef with the court's decision, it was required to proceed in its petition for rehearing to make a claim based on alleged misapprehension of the facts. It didn't do so. It waived it. Again, Congress, the US government, raised the issue, alleging that this court had misperceived the facts, and given the totality of the circumstances, including the substantial uranium purchasing, the court's decision was not in accordance with substantial evidence. And this court, in dealing with the petition for rehearing, rejected that claim. So in the end, Your Honor, we've been through this process for more than six years. We've had multiple proceedings before the Congress Department. We've had multiple adjudications before the Court of International Trade. We've already had two adjudications before this court. Congress itself has looked at this court's decision, and it applied its decision in the remand determination. And it found that this court determined that the swoop transaction between EDF and Euraleaf are outside the bounds of the countervailing duty law. The time has come for this case to come to an end. Thank you. Thank you. Your Honor, I just want to make a couple of points. The first and most important is to try to give you a sense of why this issue is important, not just to the domestic uranium enrichment industry, like Connie, you said, but to the countervailing duty law. What we're talking about are subsidies provided to producers of goods. There's no question of that. There's no question that Euraleaf is a producer of goods. Its goods are imported into the United States. The court's decision in March of 2005 created an exception that said certain kinds of subsidies provided to that producer will not be countervailable if the contracts are structured a certain way. We believe that that will create a loophole that will prevent our client and other clients and other industries facing comparable kinds of arrangements from being able to apply the countervailing duty law even in the face of injury, which was found in this case that the domestic industry was injured. So what we're asking the court to look at is the extent to which it believes its decision extends in terms of the scope of the exception, the loophole that was created by saying that certain subsidies provided to producers of goods will not be countervailable. We do not believe that the panel in March 2005 resolved the issue we're raising. In any event, precedent to this court, I'm particularly thinking of the Exxon decision, I know, Judge Mary, you were involved in, makes clear that the law of the case doctrine is totally discretionary with the court that decided the case. Whatever the CIT and whatever the Department of Commerce may have believed they were bound by a decision of this court, this court is always free to elucidate what it, and as long as you have jurisdiction that you have a mandate to disappeal, you have the ability to reconsider what you decided and to think about what you decided and make a decision as did you intend that irrespective of whether or not the purchase of screw is linked to, maybe even in the same negotiation, with the purchase of natural uranium, that's all part of one deal but done in separate transactions, separate contracts, that that likewise is irrelevant and that any such purchases, even at more than adequate remuneration, are not countervailable. So I think that that is why we think this issue is so important. It's not just important to my client, but it's very, very important, I think, to other industries because depending on the outcome of your decision, it will provide a blueprint for other industries as to how they ought to structure or how other governments ought to structure their arrangements with favored local producers so as to create a situation where they can favor that local producer by buying manufacturing services at more than adequate remuneration. I think that's the issue we're raising, that's why we think it's so important. I'd also, as I said earlier, this issue and some others are being raised in the anti-dumping context where the issue is what's a sale of merchandise. This case, under the countervailing duty law, raises the question of what's a purchase of goods. The anti-dumping case raises the question of what's a sale of goods. The briefs are ever filed in that case. It's the briefs by the appellants that are filed. And that case raises, we, USEC, have raised a similar issue to the issue we're raising here in the anti-dumping context, so there will be further debate about this issue in the anti-dumping context as well. Finally, in response to my colleague's point that USEC, in its petition for rehearing, did not raise this fact. The reason we didn't is because it really wasn't directly relevant to the issue on rehearing that was being raised, and that is the broader question of whether or not the purchases under SLU contracts, by itself or without more, was a substitute, because there had been no record in the DOC or the CIT below that established the extent to which there were these purchases or the nexus between those purchases and the purchases of SLU. We did not believe that that was a critical fact that had to be brought to the Court's attention in raising the question for rehearing, so that's what I can say about that. Your Honor, that's all I have to say. All right, thank you very much. Thank you.